```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**GARY A. BREWSTER,**

       Plaintiff,

                                    Case No. 2:14-cv-273
  v.                                Judge Marbley
                                    Magistrate Judge King

**ARAMARK CORP.,**

       Defendant.

### REPORT AND RECOMMENDATION

This matter is before the Court on *Aramark's First Motion for Judgment on the Pleadings*, ECF 29 ("*Aramark's Motion*"). For the reasons that follow, it is **RECOMMENDED** that *Aramark's Motion* be **GRANTED**.

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

This action was originally filed by plaintiff, without the assistance of counsel, in the Court of Common Pleas for Noble County, Ohio, and was removed to this Court on March 21, 2014 as a diversity action. *Notice of Removal*, ECF 1. The "complaint" filed in this action is difficult to follow because it includes multiple documents with multiple titles, some of which are not in consecutive order and some of which have duplicate pages. *See Complaint*, ECF 2 (including what appears to be a request for immediate injunctive relief identifying nine issues and proposing remedies, at PAGEID#:32-PAGEID#:34, PAGEID#:39-PAGEID#:47;[1] documents entitled civil complaint

---

[1] The parties apparently do not regard this reference to injunctive relief as a separate, live motion. In any event, plaintiff has filed a separate motion for immediate injunctive relief, ECF 5, which remains pending.

and suit, PAGEID#:35 – PAGEID#:37; documents related to proceeding *in forma pauperis* and service of summons, PAGEID#:38, PAGEID#:49-PAGEID#:53).  The parties apparently construe the operative "complaint" to include the factual allegations contained in the documents referring to injunctive relief and proposed remedies as well as those allegations appearing in documents referring to "civil complaint and suit."  *See*, *e.g.*, ECF 2, PAGEID#:46 (stating that the issues identified in the request for injunctive relief "make up the details of the actual civil action/complaint"); *Aramark's Motion*, pp. 3-5 (addressing allegations accompanying the request for injunctive relief in ECF 2); *Plaintiff's Response to May 12, 2014 Aramark's First Motion for Judgment on the Pleadings*, ECF 44 ("*Plaintiff's Response*"), pp. 2-3 (referencing allegations contained within the request for injunctive relief in ECF 2 and stating that plaintiff's original filings in state court incorporated the complaint and "issues raised" in his request for injunctive relief); *Aramark's Reply Brief in Support of its First Motion for Judgment on the Pleadings*, ECF 54 ("*Aramark's Reply*"), p. 5 (referencing plaintiff's proposed remedies contained in the pages related to injunctive relief, ECF 2).  Under these circumstances, and construing liberally the filings of a *pro se* litigant, *see*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the Court will consider all of the factual allegations contained in ECF 2 (referred to collectively as "*Complaint*" for ease of reference) in considering *Aramark's Motion*.

   Plaintiff, an inmate currently incarcerated at Noble Correctional Institution ("NCI"), alleges, on his behalf as well as on behalf of

"the 2500 other similarly situated inmates[,]" that Aramark Corp. ("Aramark"), the State of Ohio and the Ohio Department of Rehabilitation and Correction ("ODRC") previously entered into a contract that requires Aramark to "properly feed the inmates at N.C.I." by providing "proper nutrition, calories, servings, and vitamins[.] ("the contract")."  *Complaint*, PAGEID#:32, PAGEID#:35.  According to plaintiff, Aramark is paid "$3.61 per day / per inmate at NCI" for this food service, which began on September 8, 2013[2] and which will continue until July 1, 2015.  *Id*.  Plaintiff alleges that Aramark failed to meet its food service obligations in the following ways:

> [Failed] to provide the properly prepared, served, foods, and . . . [served] extremely low quality, and short servings, watered down food / servings and the overall failure to prepare and serve food in a clean and sanitary environment and facility, as well as serving bad and spoiled milk and foods . . . .
>
> A)  Failed to provide a sanitary food preparation and serving, (rats and bugs), failed to properly clean trays and food preparation utilities used daily and shared by as many as 30 inmates per meal.
>
> B)  Aramark Corp. has failed to provide a proper diet in quality, quantity, nutrition, serving size and quality daily – and has served meats, and milk that were not consumable and of little or no nutritional value.

*Id*. at PAGEID#:35 - PAGEID#:36.  *See also id*. at PAGEID#:34, PAGEID#:42- PAGEID#:47 (containing additional details regarding alleged deficiencies in portion sizes and quality of food).  Plaintiff further alleges that Aramark, in violation of the contract, has failed to operate four serving lines for each meal, which delays meal service to inmates at NCI.  *Id*. at PAGEID#:34.  Plaintiff goes on to allege

---

[2] The cited page refers to September 8, 2014, but other references in the *Complaint* suggest that plaintiff intended to refer to September 8, 2013.  *See*, *e.g.*, *id*. at PAGEID#:36 – PAGEID#:37.

that Aramark's failures in this regard resulted in injury:

> Thereby, Aramark Corp. of Columbus, Ohio – operating in Noble County, Ohio – has injured plaintiff, (inmate class), by depriving them of proper diet, nutrition, and calories, and also caused inmates to NOT EAT at chow hall – (for which Aramark Corp. is paid the same [$]3.61 per day), and causing inmates and plaintiff to purchase foods from NCI Commissary to attempt to adequately fed [sic] themselves. I do note that the inmates confined in segregation cannot purchase or acquire such additional foods – and are therefore more seriously injured.

*Id*. at PAGEID#:36 (emphasis in the original).

Plaintiff seeks multiple types of injunctive relief, which he identifies as a "Proposed Remedy/Court Order":

1. Directing NCI to "verify the actual count of inmates eating each meal – per day, and calculate that daily average[,]" *id*. at PAGEID#:33 (addressing "ISSUE ONE");

2. Directing "NCI Administration officials" to "to inform the Court or the Court's appointed mediator" "any such failure to operate four serving lines not just to the proper Aramark Corp. and ODRC supervisors/department – but to demand contract terms be enforced and the Defendant held accountable[,]" *id*. at PAGEID#:34 (addressing "ISSUE TWO");

3. Directing "State-dietician" to "scrutinize[] and accept[]" a new menu or diet for inmates and directing "this Court's appointed over-seer or expert to ensure that proper quantities, serving portions, and recipes are secured in said contract and that every meal is then served to meet these new changes[,]" *id*. at PAGEID#:42 (addressing "ISSUE 3");

4. Directing that the "County Prosecutor, Ohio Attorney General, or the Federal authorities" investigate how Aramark secured

4

"the contract with the State[,]" *id*. (addressing "ISSUE 4");

5. Directing "the ODRC and State Dietician" to "produce an EXACT APPROVED MENU with details of what items were calculated to be served in volume and/or weight measures[,]" *id*. at PAGEID#:43 (emphasis in original) (addressing "ISSUE 5");

6. Requesting that the terms of the contract be disclosed, *id*. at PAGEID#:45 (addressing "ISSUE 6");

7. Ordering "true health department inspections with Court appointed inspectors in the detail team to verify that health standards are met, with bacteria test on trays, pans, cups, etc.[,]" *id*. at PAGEID#:46 (addressing "ISSUE 7");

8. Ordering that no outdated milk be served, *id*. (addressing "ISSUE 8"); and

9. Directing NCI staff take and examine "sample trays" from inmates "(2 per each of the four lines, per meal)[,]" *id*. at PAGEID#:41 (addressing "SUPPLEMENTAL INJUNCTIVE RELIEF ISSUE").

In addition to injunctive relief, plaintiff seeks compensatory and punitive damages in "the amount so paid to Aramark Corp. by the State of Ohio, in the amount of $3.61 per day, with three times this in Punitive damages." *Id*. at PAGEID#:37. Finally, plaintiff seeks "similar relief" for "[a]ll similarly situated persons" and the "tax-payers and citizens of this State who pay said contract costs"). *Id*. *See also id*. at PAGEID#:35 (alleging that Aramark's alleged failure to meet obligations under the contract defrauded taxpayers).

Aramark has moved for judgment on the pleadings, which plaintiff opposes. *See Plaintiff's Response*. With the filing of *Aramark's*

5

*Reply*, this matter is ripe for resolution.

**II.   STANDARD**

A motion for judgment on the pleadings filed pursuant to Rule 12(c) is evaluated by reference to the same standard as is a motion to dismiss under Rule 12(b)(6), which attacks the legal sufficiency of the complaint.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Roth Steel Prods. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983).  In determining whether dismissal on this basis is appropriate, an amended complaint must be construed in the light most favorable to the plaintiff, and all wellpleaded facts must be accepted as true.  *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.*, 896 F. Supp. 734, 738 (S.D. Ohio 1994).  The United States Supreme Court has explained that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  However, a plaintiff's claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id*.  Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

**III.   DISCUSSION**

  **A.   Plaintiff Lacks Standing to Assert His Claims**

In moving for judgment on the pleadings, Aramark argues that

6

plaintiff lacks standing to assert his claims.  Plaintiff has the burden of establishing standing.  *See*, *e.g.*, *Klein v. United States Dep't of Energy*, 753 F.3d 576, 579 (6th Cir. 2014); *Michigan v. Bay Mills Indian Cmty.*, 695 F.3d 406, 411 (6th Cir. 2012).  The three components of standing are:

> (1) 'an injury in fact'; (2) 'a causal connection' between the alleged injury and the defendants' conduct - that 'the injury . . . [is] fairly traceable to the challenged action . . . and not the result of the independent action of some third party not before the court'; and (3) redressability — that the injury will 'likely . . . be redressed by a favorable decision.'

*Klein*, 753 F.3d at 579 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In the case presently before the Court, Aramark argues that plaintiff cannot meet any of the components of standing.

Aramark contends, first, that plaintiff has not suffered an injury in fact.  *Aramark's Motion*, pp. 3-4.  An injury in fact is "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 585 (6th Cir. 2013) (quoting *United States v. Hays*, 515 U.S. 737, 742-43 (1995)).  To be particularized, "the injury must affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  To the extent that plaintiff complains that the State of Ohio has overpaid Aramark for NCI's food service, Aramark argues that plaintiff is not personally harmed by the State's alleged overpayment.  *Aramark's Motion*, p. 3.  Although plaintiff also complains about the quality and quantity of the food, Aramark contends

7

that plaintiff has nevertheless failed to establish an injury in fact because he "has not alleged that he has missed a meal, that ARAMARK failed to serve him a meal, or that he has suffered any physical harm related to any food, tray, or utensil he received from ARAMARK." *Id*.

Plaintiff, however, insists that he has alleged injury, *i.e.*, the "injury of malnutrition," through his allegations regarding the quality and quantity of the food served at NCI. *Plaintiff's Response*, pp. 2-4. Plaintiff goes on to argue that Aramark's actions have caused additional injury:

> [t]he ADDED and MOST DANGEROUS INJURY-In-FACT is that . . . Aramark's actions [serving meals deficient in quantity and size] have now set the stage for physical unrest at these prisons. Summer time, the hot dorms, inmates waiting for chow and the delays of recreation and program times, then being subjected to repeated meals that lack quality, quantity, that are not prepared and served properly (to standards) . .. has set the stage for **physical** **unrest!**
>
> The potential for injury to staff, to Aramark employees, and inmates has escalated to a level that not just concerns prison staff – but alarms them. . . . This resulted in genuine fear of a riot or bad situation - motivating security staff to write complaints.
>
> The long term effects of the Defendant subjecting inmates, (men and women) of all ages to a diet that does not met [sic] the federal or state minimum standards of nutrition, of calories, of taste, appearance, of quality, are obvious to anyone – apparently anyone other than Defendant's counsel. The very reason for the standards, for the contract to state such requirements is to prevent these very types of abuses and wanton actions.

*Id*. at 3 (emphasis in original). Plaintiff also urges the Court to deny *Aramark's Motion* so that this case may proceed in order "to prevent the otherwise inevitable danger the Defendant will cause." *Id*. at 6.

Seizing on this language, Aramark argues in reply that

8

plaintiff's desire "to prevent" an "inevitable danger" confirms its contention that plaintiff's "injury" is speculative and not a concrete and actual injury in fact. *Aramark's Reply*, pp. 2-3.  As to the alleged injury of inadequate food service, Aramark contends that another court in this circuit has concluded that prisoner-plaintiffs before it lacked standing to assert claims based on similarly speculative injuries related to alleged deficiencies in prison food service and mold in the prison.  *Id*. at 3-4 (citing *Reynolds v. Herrington*, No. 4:13CV-P132-M, 2014 U.S. Dist. LEXIS 44352 (W.D. Ky. Apr. 1, 2014); *Stanfield v. Thompson*, No. 4:12CV-P54-M, 2012 U.S. Dist. LEXIS 108984, at *10 (W.D. Ky. Aug. 3, 2012); *Voorhees v. Huber*, No. 1:10CV-76-M, 2010 U.S. Dist. LEXIS 82102, at *6 (W.D. Ky. Aug. 10, 2010)).  According to Aramark, "tension or emotional distress of life in prison does not amount to a physical injury," and plaintiff has not alleged any actual injury resulting from "the stage of physical unrest" at NCI.  *Id*. at 4.

Aramark's arguments are well-taken.  Neither of plaintiff's claimed injuries constitutes the required injury in fact.  First, plaintiff complains generally of the "injury of malnutrition," but he does not allege that he, in fact, personally suffered from malnutrition or that he personally suffered from any other concrete injury resulting from the allegedly deficient food service.  Instead, plaintiff simply speculates as to some future, undefined harm.  *See*, *e.g.*, *Plaintiff's Response*, p. 3 (complaining of unspecified "long term effects of the Defendant subjecting inmates" to an allegedly nutritionally deficient diet).  This kind of "speculative injury does

9

not vest a plaintiff with standing[.]" *King v. Deskins*, No. 99-6381, 2000 U.S. App. LEXIS 19509, at *4 (6th Cir. Aug. 8, 2000). Absent allegations that the alleged "injury of malnutrition" is a "concrete and particularized" and "actual or imminent" injury that affects him in a personal way, plaintiff cannot establish an injury in fact. *See*, *e.g.*, *id.*; *Lujan*, 504 U.S. at 560 n.1; *600 Marshall Entm't Concepts, LLC*, 705 F.3d at 585. *See also Reynolds*, 2014 U.S. Dist. LEXIS 44352, at *13-15 (finding no requisite injury where the plaintiff did not allege that he was housed with mold and alleged only a speculative injury, *i.e.*, that mold is "a serious and imminent danger to the health of Plaintiff and all inmates") (internal quotation marks omitted); *Stanfield*, 2012 U.S. Dist. LEXIS 108984, at *10 (finding that the plaintiff failed to set forth a physical injury suffered as a result of, *inter alia*, insufficient meals served at the correctional institution where the plaintiff alleged that the defendant is "serving Meals that are way under the required Balance Diets serving Are small And ½ the size they should be for Bal Diet") (internal quotation marks omitted); *Voorhees*, 2010 U.S. Dist. LEXIS 82102, at *6 (finding speculative a plaintiff's claimed injury as a result of mold where plaintiff "does not cite any symptoms that he experienced related to breathing the mold such as coughing, allergies, headaches, etc."); *Price v. Rees*, No. 5:06CV-P186-R, 2007 U.S. Dist. LEXIS 62463, at *12 (W.D. Ky. Aug. 23, 2007) (finding that prisoner-plaintiff lacked standing to assert claim where "he has not alleged that the food is presently causing him any ill side effects (high blood pressure, cholesterol, weight gain etc.)"). Accordingly, plaintiff's alleged

10

"injury of malnutrition" is also insufficient to establish the requisite injury in fact.

The alleged potential for physical unrest resulting from Aramark's deficient food service is similarly speculative. Plaintiff argues that the *Complaint* establishes "genuine fear of a riot – or bad situation," but concedes that no such injury has actually occurred or harmed him personally. *See*, *e.g.*, *Plaintiff's Response*, pp. 3 (complaining of, *inter alia*, "[t]he *potential* for injury to staff, to Aramark employees, and inmates" and "long term effects" resulting from an allegedly deficient diet) (emphasis added), 6 (asking the Court "to prevent the otherwise inevitable danger the Defendant will cause"). The kind of speculative injury alleged by plaintiff does not constitute an injury in fact sufficient to confer standing. *See*, *e.g.*, *Lujan*, 504 U.S. at 560 n.1; *600 Marshall Entm't Concepts, LLC*, 705 F.3d at 585; *King*, 2000 U.S. App. LEXIS 19509, at *4.

Even if plaintiff could establish an injury in fact, the Court is not persuaded that plaintiff has established the component of redressability, *i.e.,* that the injury will likely be redressed by a favorable decision. For example, plaintiff seeks injunctive relief against persons and entities who are not parties to this litigation. *See*, *e.g.*, *Complaint*, PAGEID#:33-PAGEID#:34; PAGEID#:41-PAGEID#:43; PAGEID#:45-PAGEID#:46 (seeking injunctive relief against NCI, "NCI Administration officials," "State Dietician," "County Prosecutor, Ohio Attorney General, or the Federal authorities," ODRC, "health department," "Court appointed inspectors," and "NCI staff"). This Court, however, cannot enter an injunction against persons or entities

11

over whom the Court lacks personal jurisdiction through proper service of process. *See*, *e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *In re NAACP, Special Contribution Fund*, Nos. 87-3366, 87-3673, 849 F.2d 1473, 1988 U.S. App. LEXIS 8110, at *6-7 (6th Cir. June 13, 1988) ("An *in personam* judgment, whether in equity or at law, is invalid and unenforceable against a defendant unless the court entering the judgment has *in personam* jurisdiction."); *Lawson v. McQuate*, No. 2:12-cv-00533, 2012 U.S. Dist. LEXIS 162633, at *2 (S.D. Ohio Nov. 14, 2012) ("[T]his Court does not have jurisdiction to issue an injunction against the Ohio Department of Rehabilitation, which is not a party to this action."). Accordingly, the Court is without power to grant the requested injunctive relief.

   Plaintiff also seeks money damages from Aramark, but he fails to explain how a monetary award will redress his alleged injuries of malnutrition and the potential for physical unrest at NCI. Indeed, plaintiff implicitly concedes that money damages will not remedy these injuries. *See Complaint*, PAGEID#:32- PAGEID#:33 (stating that injunctive relief is the "only means" to "stop the injuries"). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). For all these reasons, the Court concludes that plaintiff lacks standing to assert his claims.

**B. Plaintiff Lacks Standing to Assert Claims on Behalf of Others**

Plaintiff also purports to assert claims on behalf of others: "2500 other similarly situated inmates" and "tax-payers and citizens." *Complaint*, PAGEID#:32, PAGEID#:37. Plaintiff, however, concedes that he does not have "tax-payer status[.]" *Plaintiff's Response*, p. 6. Moreover, as explained above, plaintiff must have suffered a concrete and actual injury that affected him in a personal way; he cannot seek redress for an injury allegedly suffered by third parties. *Cf. 600 Marshall Entm't Concepts, LLC*, 705 F.3d at 585; *Lujan*, 504 U.S. at 560 n.1. Plaintiff therefore lacks standing to assert claims on behalf of other inmates or citizens. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Dodson v. Wilkinson*, No. 06-4136, 304 Fed. Appx. 434, at *438 (6th Cir. Dec. 24, 2008). Finally, plaintiff, as a *pro se* inmate, may not pursue a class action based on prison conditions. *See, e.g., Dodson*, 304 Fed. Appx. 434, at *438; *Palasty v. Hawk*, No. 00-5840, 15 Fed. Appx. 197, 200 (6th Cir. June 20, 2001) (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (6th Cir. 2000)).[3]

**WHEREUPON**, it is **RECOMMENDED** that *Aramark's First Motion for Judgment on the Pleadings*, ECF 29, be **GRANTED**. It is therefore **FURTHER RECOMMENDED** that the remaining pending motions, ECF 5, 9, 10, 14, 15, 68 be **DENIED as moot**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file

---

[3] On August 6, 2014, it was recommended that plaintiff's motion for determination as a class action, ECF 20, be denied without prejudice to renewal should counsel enter an appearance on behalf of plaintiff. *Report and Recommendation*, ECF 61. Neither party has objected to this recommendation.

and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

   The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.* *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


October 2, 2014                            *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge